PACIFIC COAST S. S. CO. v. FERGUSON et al.

(Circuit Court of Appeals, Ninth Circuit. October 6, 1896.)

No. 281.

ADMIRALTY JURISDICTION—SEPARABLE CONTRACTS.

A steamship company, in connection with its business of carrying freight, conducted a warehouse at one of its ports. It had a traffic contract with a railroad to bring freight from the interior. Libelees purchased a lot of barley lying in the warehouse, upon which railroad charges were unpaid. The company transported the barley under contract with the libelees, who paid the warehouse charges and water freight, but refused to pay the railroad charges. *Held,* that the contract, so far as it related to the transportation by sea, was purely maritime, but, so far as it pertained to railroad charges, it was not maritime, and the admiralty court had no jurisdiction of a suit to enforce it. 70 Fed. 870, affirmed.

Appeal from the District Court of the United States for the Northern District of California.

This was a bill in personam by the Pacific Coast Steamship Company against Eben W. Ferguson and others. From a decree of the district court dismissing the libel for want of jurisdiction (70 Fed. 870), the company appealed.

George W. Towle, Jr., for appellant.
E. B. & George H. Mastick, for appellees.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge. The Pacific Coast Steamship Company, a corporation, filed its libel in personam against Moore, Ferguson & Co., the appellees herein, to recover the sum of $251.15, the balance alleged to be due on a maritime contract for the transportation of 2,448 sacks of barley from Moss Landing to San Diego, at the agreed rate of $4.35 per ton, upon which it was alleged that $339.38 only had been paid. The answer denied that the agreed rate was $4.35 per ton, but alleged that the same was $3.35 per ton, and pleaded the payment of $339.38, and a tender of the remainder of the contract price. Upon the trial it appeared that the libelant was engaged in the business of carrying freight and passengers by water between San Francisco and San Diego and other ports on the coast of California, and that it had a traffic contract with the Pajarro Valley Railroad Company, which was engaged in carrying freight by railroad from a point in the interior to Moss Landing, where the libelant kept and maintained a warehouse. Moore, Ferguson & Co., the appellees, were commission merchants in San Francisco. They had ascertained that the barley in question was in the warehouse at Moss Landing, where it could be purchased from Waterman & Co., the owners, and they desired to purchase it for the purpose of filling an order from the Howard Commercial Company of San Diego. They inquired of the steamship company concerning the freight rate that would be charged for transportation of the grain from Moss Landing to San Diego. They were informed that the rate would be $3.10 a ton. They then notified the steamship company that they had purchased the grain as it lay in the warehouse, and wished the company to transport the same to the Howard Commercial Company at San Diego, and to charge and collect from the consignee the sum of $2.50 per ton, which was the rate the consignee had been accustomed to pay on similar shipments from San Francisco, and that they (Moore, Ferguson & Co.) would pay the difference between that amount and $3.10, the agreed freight rate. During these negotiations between Moore, Ferguson & Co. and the steamship company, there was talk about possible back charges upon the grain at the warehouse. The appellant contends, and its officers testified on the trial, that the contract was that Moore, Ferguson & Co. were to pay the warehouse charges, which were 25 cents a ton, and the railroad charges for transportation of the grain to Moss Landing, which were subsequently ascertained to be $1 per ton, as it was found that the grain had been carried by rail from Blanco. The appellees admitted that they undertook to pay the warehouse charges, as the same were stated, in the bill of lading which they obtained from the owners, at 25 cents a ton, but they denied that there was any conversation concerning the railroad charges. The matter in dispute between the parties, therefore, is whether or not Moore, Ferguson & Co. were liable for the railroad back charges of $1 per ton upon the grain as it lay in the warehouse. The district

court held that it had no jurisdiction to entertain the controversy, for the reason that it appeared that the contract, if made, was not a maritime contract, and was therefore not within the jurisdiction of the admiralty. 70 Fed. 870. On the appeal to this court the principal question for our determination is that of the jurisdiction.

It is contended upon the part of the appellant that the contract was entire and not separable; that the steamship company was to perform but one act, which was the act of transportation of freight from one port to another; and that, inasmuch as the promises of the consignors were all based upon a single consideration, it is immaterial in what manner or upon what accounts the money thus paid was to be applied. The whole question, as it appears to us, is determined by the answer that shall be given to the inquiry, what was the consideration of the consignors' promise, if there was a promise, to pay the railroad back charges? It must be apparent that that promise was not a part of the contract of transportation. The steamship company was in two lines of business. It was maintaining a line of transportation by water, and in connection therewith was conducting the business of a warehouseman. Under the contract it was to do two distinct acts,— the one, to release the grain from its warehouse and satisfy the charges thereon; the other, to transport and deliver the goods from Moss Landing to San Diego. For the latter service it demanded $3.10 a ton. For the former, upon its own contention, it demanded 25 cents warehouse charges and $1 railroad charges. If the grain had been lying at the dock at Moss Landing, ready to be transported, and the steamship company had said to the consignors, "We will transport this grain for you upon payment of $3.10 a ton and the assumption upon your part of certain charges," which charges were not a lien upon the grain, and the consignors had, in consideration of the transportation only, agreed to pay all the demands so made, it might be said that this was a maritime contract of affreightment, and that the transportation was to be done in consideration of the promises of the consignors. But the grain was in the warehouse of the steamship company. The company had a lien upon it for its warehouse charges and the railroad freight charges under its traffic contract. It could not be required to deliver possession until all the back charges were paid. It was in a position to demand payment of those charges before it should part with the possession of the property. It is plain to be seen that this is what it did. While not saying so in express terms, it gave Moore, Ferguson & Co. to understand that it would transport the property at $3.10 a ton, but that it would not surrender possession of the property until it received or was assured the payment of the back charges. It is in precisely the attitude it would occupy if the grain had been at Blanco, instead of at Moss Landing, when the contract was made, and it had undertaken to carry the same to San Diego at $1 for the carriage by land and $3.10 for that by water. The contract, as far as it pertained to the transportation, was purely a maritime contract, and enforceable

in the admiralty. So far as it pertained to the railroad charges, it was not maritime; and the admiralty court is without jurisdiction to entertain it.

The lines of the jurisdiction of the admiralty are strictly defined, and while, in the American courts, the jurisdiction has been enlarged from the English rule, which confined it to "things done upon the seas," and in the matter of contracts limited it to those made upon the sea, and to be executed thereon, so that now the test of jurisdiction is whether or not the contract has reference to maritime service or maritime transactions, its scope has, nevertheless, not been further extended, but remains as defined by the supreme court in Insurance Co. v. Dunham, 11 Wall. 1, where the court said that the jurisdiction depended, "not on the place where the contract was made, but on the subject-matter of the contract. If that was maritime, the contract was maritime. This may be regarded as the established doctrine of the court." In the case of The Richard Winslow, 67 Fed. 259, which was subsequently affirmed by the circuit court of appeals of the Seventh circuit (18 C. C. A. 344, 71 Fed. 426), a schooner had received a cargo of corn for transportation from Chicago to Buffalo at three cents per bushel, "including free storage in vessel in Buffalo harbor until April 1, 1894." The vessel arrived at Buffalo in November, 1893. The consignors libeled the vessel upon a claim for damages to the cargo while stored in the vessel after her arrival at Buffalo. The court dismissed the libel, upon the ground that the portion of the contract which provided for storage after the arrival of the vessel at her port of destination was not maritime, and was not cognizable in the admiralty. In that case the consideration was not apportioned to the two services which were to be rendered by the vessel. It was entire. It is directly deducible, from the conclusions arrived at by both the courts, that, had the libel been brought by the owners of the vessel to recover the freight money under the contract, it would have been dismissed for want of jurisdiction, upon the ground that it was not based wholly upon a maritime contract. A similar doctrine was applied in The Pulaski, 33 Fed. 383; The Murphy Tugs, 28 Fed. 429.

It is urged by the appellant that, in any view of the case, there is jurisdiction of the admiralty court to entertain this controversy, for the reason that the payments made on account by the appellees have been applied by the appellant, first, upon the back railroad charges and warehouse dues, and that the libel is brought to recover a balance due only for transportation by sea. This contention is not sustained, either by the pleadings or by the evidence. The libel alleges a contract to carry the grain at $4.35 per ton. It admits payment of $2.50 per ton, and seeks to recover a balance of $2.10 per ton. There is nothing to show that the appellant at any time made a special application of the payment which it received at San Diego of $2.50 per ton. The evidence does show, however, that at the time when that payment was made the amount of the railroad charges had not been ascertained, and was unknown to the appellant. It shows, moreover, that after the date of that

payment the appellant made a demand upon the appellees for this particular sum of $1 per ton. It appears, also, from a statement furnished by the appellees to the steamship company on the 16th day of November, 1894, which was some two weeks after the arrival of the cargo at San Diego, that they had placed the payment of $2.50 per ton to the credit of the account of the $3.10 per ton which they had contracted to pay for sea freight, and that in said statement they charged themselves with storage on the grain in warehouse at 25 cents per ton, and proffered payment of the remainder of the amount which they admitted to be due. No objection was made to such application of the payment to account at that time, and we find nothing in the record on which to base the claim of the appellant, which now appears to be for the first time made, that this suit may be considered a proceeding to recover a balance due upon the $3.10 agreed to be paid for the carriage of the grain by sea. We find no error in the decree of the district court, and the same will be affirmed, with costs to the appellees.