CALIFORNIA–ATLANTIC S. S. CO. v. CENTRAL DOOR & LUMBER CO.

(Circuit Court of Appeals, Ninth Circuit. May 19, 1913.)

No. 2,116.

1. ADMIRALTY (§ 59*)—PLEADING.

In admiralty the court determines cases on equitable principles, and it is never made a point of pleading whether the case rests on contract or tort.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 479, 480; Dec. Dig. § 59.*]

2. ADMIRALTY (§ 18*)—JURISDICTION—CASES OF TORT.

In cases of tort the jurisdiction in admiralty depends entirely on locality, and to confer jurisdiction the tort must have been committed on the high seas or navigable waters.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 206–221; Dec. Dig. § 18.*

Jurisdiction of torts, see notes to Campbell v. H. Hackfeld & Co., 62 C. C. A. 279; Monongahela River Consol. Coal & Coke Co. v. Schinnerer, 117 C. C. A. 203.]

3. COURTS (§ 280*)—JURISDICTION OF FEDERAL COURTS—PRESUMPTION.

The jurisdiction of a federal court cannot rest on presumption, but, on the contrary, the presumption is against jurisdiction and it must appear by positive and direct averment.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 816–818; Dec. Dig. § 280.*].

4. ADMIRALTY (§ 60*)—JURISDICTION—SUFFICIENCY OF LIBEL.

The libel in a suit in personam in admiralty alleged that libelant shipped goods at Philadelphia on a steamship of respondent bound to the Isthmus of Panama, to be carried by such steamer and connecting lines to Portland, Or.; that the goods arrived at Portland on another steamer of respondent in a damaged condition; that the loss was caused solely by the negligence and misconduct of respondent, its employés, agents, or servants, who negligently and improperly stowed, carried, and handled the goods. Held, that the libel did not state a cause of action in tort within the admiralty jurisdiction, since it did not show that the tort was committed on the high seas; nor one on contract within such jurisdiction, because the contract was not all maritime, and, conceding that it was divisible, there was no allegation of a breach of the maritime portion.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 482–496; Dec. Dig. § 60.*]

Morrow, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the District of Oregon; Robert S. Bean, Judge.

Suit in admiralty by the Central Door & Lumber Company against the California-Atlantic Steamship Company. Decree for libelant, and respondent appeals. Reversed.

The appeal in this case is taken from a decree rendered upon a default against the appellant for failure to answer or except to the libel. The libel was in personam, and it alleged that in December, 1910, the appellee, pursuant to an arrangement theretofore made with the appellant, shipped in good order and condition on board the steamship "Mills," then lying in the port of Philadelphia, and bound to the Isthmus of Panama, to be transported in said steamer and by connecting lines of the appellant's steamers to Portland, Or., certain merchandise therein described, and that the appellee directed the appellant to insure said shipments for the appellee's account; that on the arrival of said goods at Portland, Or., they were found to be injured; that some were injured by being water soaked, and others by heat, that others had been broken and rendered valueless, all owing to the negligence of appellant in stowing and handling the same; that the market value of said goods at Portland on the date of the arrival thereof was $6,988.81 "including the charges paid to respondent, all of which became and was a total loss to libelant." The appellee in its libel proceeded to allege that the loss was without fault or negligence on the appellee's part, but was occasioned solely by negligence and misconduct of the appellant, its employés, agents, or servants. Attached to the libel was a schedule, setting forth in detail the quantities, qualities, and market values of the goods so shipped and damaged, amounting to the sum of $6,988.81 "including the freight, insurance, and other charges paid to respondent by libelant, after deducting all allowance for salvage on goods shipped." The default of the appellant and its surety having been entered, the court thereafter, upon proofs adduced by the appellee, decreed that the libel be amended to conform to the proof of damages sustained by the appellee by increasing the amount claimed in the libel to $7,288.42 with interest thereon as prayed in the libel, and the court found that the appellee had sustained damages by reason of the negligence of the appellant in the sum of $7,288.42, and for that amount with interest and costs a decree was entered.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Malarkey, Seabrook & Stott, of Portland, Or., and T. A. Thacher, G. S. Arnold, and William Denman, all of San Francisco, Cal., for appellant.

Jesse Stearns and John H. Hall, both of Portland, Or., for appellee.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). On the appeal to this court, the appellant presents the question of the jurisdiction of the District Court to entertain the libel and contends that no cause within the jurisdiction of the admiralty is stated for the reason that it is not alleged in the libel that the damage to the goods occurred while the same were upon either of the vessels which carried the same, and that, for aught that appears to the contrary, all the injury may have been sustained during the transportation of the goods across the Isthmus of Panama.

[1] When goods are delivered to a carrier, there is a contract, either expressed or implied, that the carrier will carry them with safety. For negligence in carrying them, resulting in loss or damage thereto, an action will lie either for breach of contract or for tort. Cooley on Torts, 157. In the present case the libel is for tort, but in admiralty the court will determine cases upon equitable principles. "It is never made a point of pleading whether the case rests upon contract or tort." Borden v. Hiern, 1 Blatch. & H. 293, Fed. Cas. No. 1,655; Pacific Coast S. S. Co. v. Bancroft-Whitney Co., 94 Fed. 182, 193, 36 C. C. A. 135. We have to inquire, therefore, whether upon either view of the cause of action here pleaded facts are alleged which show affirmatively that there is jurisdiction in admiralty.

[2] In cases of tort the jurisdiction in admiralty depends entirely upon locality. There can be no other test. The tort must have been committed on the high seas or navigable waters. The Propeller "Commerce," 1 Black, 574, 17 L. Ed. 107. Now, there is no allegation in the libel as to the place where the goods were injured. The libel alleges that the appellant owned or had chartered the steamships "Mills" and "Stanley Dollar"; that the appellee at Philadelphia shipped the goods on the "Mills" bound to the Isthmus of Panama, "to be transported in said steamer and connecting lines to Portland, Or."; that the goods arrived at Portland by the "Stanley Dollar" and were there found to be injured and damaged when they were delivered to the appellee; that the loss was caused solely by the negligence and misconduct of the appellant, its employés, agents, or servants; that the goods were negligently and improperly stowed, *carried, and handled* by the appellant, its employés, agents, and servants. From these allegations the injury and damage to the goods might have occurred as well while they were in transit by rail across the Isthmus as upon either or both of the steamships; for, while the operatives of the railway were not "employés" or "servants" of the appellant, they were its "agents" in moving the goods on the railway. The railway was the "connecting line" between the two steamships. No jurisdiction, therefore, is alleged as for tort.

We turn to the question whether there is shown a breach of con-

tract within the jurisdiction of the admiralty. The contract of affreightment was to carry the goods from Philadelphia to Portland, Or. It involved two voyages by steamers and a carriage across the Isthmus by rail. In The Pacific, 1 Blatchf. 569, Fed. Cas. No. 10,643, Mr. Justice Nelson said:

"A contract must be wholly of admiralty cognizance or else it is not at all within it. There cannot be a divided jurisdiction."

In Insurance Co. v. Dunham, 11 Wall. 1, 20 L. Ed. 90, the court said that if the subject-matter of a contract is maritime the contract is maritime. Decisions illustrative of that doctrine are Pacific Coast S. S. Co. v. Ferguson, 76 Fed. 993, 22 C. C. A. 671; The Richard Winslow, 67 Fed. 259, affirmed 71 Fed. 426, 18 C. C. A. 344; The Pulaski (D. C.) 33 Fed. 383; The Murphy Tugs (D. C.) 28 Fed. 429.

The decision in The Moses Taylor, 4 Wall. 411, 18 L. Ed. 397, is cited by both the appellant and the appellee. The Moses Taylor was a steamship owned by one Roberts in the city of New York, and was employed by him in carrying passengers and freight between Panama and San Francisco. Hammons at New York had entered into a contract with Roberts, the owner of this steamship, by which, in consideration of $100, Roberts agreed to transport him from New York to San Francisco, with reasonable dispatch, and to furnish him with proper and necessary food, water, and berths or other conveniences for lodging on the voyage. For alleged breach of the contract Hammons brought an action against the Moses Taylor in a justice court in the city of San Francisco under a statute of California which provided for such a proceeding in rem, alleging in his complaint that he was detained at the Isthmus of Panama eight days, and that the provisions furnished him on the Moses Taylor were unwholesome, and that he was crowded into an unhealthy cabin therein, without sufficient room or air for health or comfort, to his damage, etc. Objection was made to the jurisdiction. The justice decided that he had jurisdiction, and gave judgment for Hammons. The case was appealed to the county court, where the objection to the jurisdiction was renewed but overruled, and thence the case was taken to the Supreme Court of the United States on the question of the jurisdiction. That court in the opinion took no note of the argument, which was adduced by counsel for the plaintiff, that the contract required for its fulfillment the use of two steamers and a railway, and that the land carriage was a substantial part of the voyage, and that the question of jurisdiction will not be determined by a comparison of the distances by land and by water, and made no reference to the allegation of the complaint that there was a breach of the contract in that the plaintiff was delayed eight days on the Isthmus, but treated the case as one arising solely on breach of contract on the voyage from Panama to San Francisco. The court said that:

"Notwithstanding the Moses Taylor was not named in the original contract, the contract should be treated as if it specified a transportation by that steamer on the Pacific for the distance between Panama and San Francisco, and for alleged breach of this contract the present action was brought. * * * The contract for the transportation of the plaintiff was a maritime

contract. As stated in the complaint, it related exclusively to a service to be performed on the high seas."

That the contract related solely to a service to be performed on the high seas could not have been said if the court had had under consideration the whole contract, for a considerable portion of it was to be performed, not on the high seas, but by a railway across the Isthmus. It will be seen that the court found jurisdiction in admiralty only in the breach of that portion of the contract which provided for transportation by sea from the Isthmus to San Francisco. The implication of the decision is to deny jurisdiction in admiralty of the contract as a whole. In any view of its effect, the most that the appellee can claim therefrom is that it contemplates that a contract such as that which is here before us, although in its terms it is undivided, may, in case of a breach thereof occurring upon either arm of the transportation by sea, be deemed divisible into its three component parts so as to give jurisdiction in admiralty to recover for the loss or damage which occurred on that branch of the voyage. But even in such a case there can be no question that it would be necessary to allege in the libel that the breach occurred upon one of the voyages by sea or upon both.

Aside from The Moses Taylor no other case is found which presents facts similar to those in the case at bar; but certain cases are cited in support of the general proposition that a contract of affreightment is maritime and within the admiralty jurisdiction if it is substantially to be performed on navigable waters. Thus in Phœnix Ins. Co. v. Erie & W. Trans. Co., 10 Biss. 18, Fed. Cas. No. 11,112, it was said:

"The true test of a maritime service or a maritime contract is whether it is to be substantially performed * * * on navigable waters."

In that case the libel was brought in personam to recover for a loss on shipments of grain. The grain was to be carried from Chicago by the lakes to Erie, Pa., and thence by rail to inland towns in Pennsylvania and New Jersey.' Through bills of lading denoting a rate for through transportation were issued. The respondent was to carry the grain to Erie and there deliver it to the elevator company. The bills of lading expressly provided that of the several connecting carriers only the one upon whose line a loss might happen should be responsible therefor. The loss occurred while the property was in the possession of the respondent in course of transportation by water. Although a single through freight was charged, the court held that the carriage of the grain by water by the respondent was a distinct and independent service. The court said:

"That a very substantial part of the service to be performed under these contracts was to be performed upon navigable waters is not to be disputed. The loss happened upon these waters, while such service was being rendered."

And the court held that admiralty had jurisdiction.

Applying that doctrine to the case at bar, its effect is to sustain the proposition that, if the libel in the present case had alleged that the

loss occurred on either voyage on the high seas, there would be jurisdiction in admiralty to recover therefor.

In Monteith v. Kirkpatrick, 3 Blatchf. 279, Fed. Cas. No. 9,721, decided in 1855 at a time when canals were held not to be navigable waters of the United States, the libel was in personam to recover freight charges for the transportation of flour from a port in Canada through Lake Ontario and the Erie Canal to Albany, and thence to New York. The jurisdiction was challenged on the ground that part of the transportation was through the canal. The court said:

"According to the usage of the business, the contract of shipment with the respondent implied an undertaking to repay those charges, when advanced by the libelants; and they became thereby chargeable upon the goods shipped, the same as the freight from Albany to New York. The contract, therefore, as respected the whole amount claimed by the libelants, was, in judgment of law, an entirety, not severable, and contains all the essential elements of a maritime contract. The shipment of the goods to which it related, began and ended upon waters within the admiralty jurisdiction. I am inclined, therefore, to think that this ground of defense is not well taken."

A somewhat similar case was decided by Judge Blatchford in 1875, in The E. M. McChesney, 8 Ben. 150, Fed. Cas. No. 4,463. The court sustained the jurisdiction in admiralty over a contract of affreightment whereby a cargo of oats was shipped on a canal boat at Erie and carried by a navigable stream flowing into Lake Erie, and thence to New York by the Erie Canal and Hudson river, all in the same canal boat. But one of the grounds of the decision was that in the case of The Montello, 20 Wall. 430, 22 L. Ed. 391, the Supreme Court had held that a canal connecting the Fox river and the Wisconsin river was navigable water of the United States, and therefore under the general jurisdiction of admiralty.

So also there is a line of cases which hold that the jurisdiction in admiralty of libels for seamen's wages for services rendered depends upon the question whether the services were substantially performed or to be performed upon the sea or navigable waters connected therewith. The Steamboat Thomas Jefferson, 10 Wheat. 428, 6 L. Ed. 358; The Steamboat Orleans, 11 Pet. 175, 9 L. Ed. 677; The Salisbury, Olcott, 71, Fed. Cas. No. 3,694; McCormick v. Ives, 1 Abb. Ad. 418, Fed. Cas. No. 8,720. Such a rule as to cases of that nature is a rule of necessity, for it is impossible to sever such services and to say what was performed on navigable waters of the United States and what was performed on other waters.

[3] The determination of the question of jurisdiction in the present case is not aided by reference to decisions which hold that, in case of loss or damage to goods covered by a bill of lading, the presumption is that the loss or damage was occasioned by the act or default of the carrier, and that the burden is upon the latter to show that it arose from a cause for which it is not responsible, or decisions which hold that the presumption is that the damage occurred while the goods were in the possession of the respondent. Those are presumptions raised by law to fix liability in cases of which the court has jurisdiction. They cannot be invoked for the purpose of showing jurisdiction. "No presumptions arise in favor of the jurisdiction of the federal

courts." Ex parte Smith, 94 U. S. 455, 24 L. Ed. 165. On the contrary, the legal presumption is that every case is without their jurisdiction unless the contrary affirmatively appears. Robertson v. Cease, 97 U. S. 646, 649, 24 L. Ed. 1057; United States v. Southern Pacific R. Co. (C. C.) 49 Fed. 297. Said Marshall, C. J., in Brown v. Keene, 8 Pet. 112, 8 L. Ed. 885:

"The decisions of this court require that the averment of jurisdiction shall be positive—that the declaration shall state expressly the fact on which jurisdiction depends. It is not sufficient that jurisdiction may be inferred argumentatively from its averments."

If the jurisdictional facts are not alleged in the pleadings, the judgment or decree, while not an absolute nullity, is erroneous, and may upon writ of error or appeal be reversed for that cause. McCormick v. Sullivant, 10 Wheat. 192, 6 L. Ed. 300; Metcalf v. Watertown, 128 U. S. 586, 9 Sup. Ct. 173, 32 L. Ed. 543.

[4] For the purpose of determining the question of the jurisdiction of this cause as a case in the admiralty, the libel must be regarded as if it had affirmatively alleged that the damage to the goods occurred while they were being carried by rail across the Isthmus. The test question is: Would there be jurisdiction in admiralty if the libel had so alleged? The carriage across the Isthmus was not a mere incident to carriage by sea. It was a distinct, independent, and substantial part of the transportation of the goods. Its place in this contract of affreightment is not to be determined by its length in miles or time relative to the two voyages by sea.

We see no escape from the conclusion that the court below was without jurisdiction of the cause, and for that reason the decree must be reversed and the cause remanded, with leave to the appellee to amend its libel; but, as the question of the jurisdiction was not presented to the court below, the appellant will be denied costs on the appeal.

MORROW, Circuit Judge (dissenting). I am of the opinion that the libel in this case states a case within the admiralty and maritime jurisdiction of the District Court, and that the decree should be affirmed.

It is alleged in the libel, in substance, that the respondent is a common carrier, and owned and chartered divers steamships which respondent employed in carrying cargo between Philadelphia and other Atlantic ports and Portland and other Pacific ports; that among the steamships so owned or chartered were the steamships "Mills" and "Stanley Dollar"; that the libelant shipped certain merchandise in good order and condition on board the steamship "Mills" at the port of Philadelphia, bound for the Isthmus of Panama, and connecting lines and steamers, to Portland, Or.; that the merchandise was properly packed for carriage and handling, and was consigned to the libelant at Portland, Or.; that the merchandise arrived at Portland, Or., in the steamship "Stanley Dollar" and was delivered to the libelant in a damaged condition, owing to the negligence of the respondent in stowing and handling said merchandise.

The "stowing" of merchandise is a technical term, used in maritime law, and refers to "the stowage, packing or arranging of cargo in a ship, in such manner as to protect the goods from friction, bruising or damage from leakage." Black's Dictionary. See, also, Scrutton on Charter Parties & Bills of Lading (6th Ed.) art. 50; Carver on Carriage by Sea (5th Ed.) §§ 272, 273; Abbott on Shipping (14th Ed.) p. 505. .

"The stowage of the cargo is the sole act of the shipowner." Lord Esher, in Harris v. Best, Ryley & Co., 7 Asp. M. C. (1892) 274.

In the "Harter Act" (Act Feb. 13, 1893, c. 105, 27 Stat. 445 [U. S. Comp. St. 1901, p. 2946]) the word "stowage" is used in the sense of maritime law, providing against any agreement in a bill of lading or other shipping document relieving the shipowner or master from liability for loss or damage arising from negligence, fault, or failure in proper loading, stowage, custody, care, or proper delivery, of merchandise committed to his charge; and I do not find it used in any other sense in any of the decisions. When, therefore, the libel charges that the merchandise delivered to the libelant was damaged through the negligence of the respondent in stowing and handling such merchandise, a case is stated within the admiralty and maritime jurisdiction of the federal court; and this is so whether the case is for a tort or upon a contract of affreightment. Furthermore, there is a presumption that the contract was a maritime contract, arising out of the rule that, if the goods were delivered by the last carrier in a damaged condition, a presumption arises, without further evidence, that the damage occurred while the goods were in the possession of the last carrier, and that the burden is upon him to prove that they were in a damaged condition when received by him; a double presumption being entertained that the goods were accepted in good condition by the first carrier and that such good condition continued until they were received by the last carrier, notwithstanding transportation over intermediate lines. 6 Cyc. 491.

The merchandise having been shipped in good order and condition at Philadelphia, on board the steamer "Mills," and delivered at Portland, Or., to the libelant, from the steamer "Stanley Dollar," in a damaged condition, the presumption is that the merchandise was damaged while in the care and custody of the last carrier, namely, the steamer "Stanley Dollar." This presumption adheres to the transaction and determines its character for the purpose of jurisdiction.

But dealing with the transaction as a whole I am of the opinion that the court had jurisdiction of the case under the rule laid down in the case of The Moses Taylor, 71 U. S. (4 Wall.) 411, 18 L. Ed. 397. In that case one Hammons entered into a contract with one Roberts, as owner of the steamship, for transportation from New York to San Francisco, as a steerage passenger, with reasonable dispatch, and to furnish him with proper and necessary accommodations on the voyage. For alleged breach of this contract Hammons brought an action, under a law of the state of California, against the vessel, in the justice's court in San Francisco. The breach alleged

was that the plaintiff was detained at the Isthmus of Panama eight days, and that the provisions furnished him on the voyage were unwholesome, and that he was crowded into an unhealthy cabin, without sufficient room or air for either health or comfort, in consequence of a large number of steerage passengers, more than the vessel was allowed by law to have, or could properly carry. The agent of the vessel filed an answer in which he denied the allegations of the complaint, and asserted that the court had no jurisdiction, because the cause of action, as against the vessel, was one of which the courts of admiralty had exclusive jurisdiction. The justice decided that he had jurisdiction, and gave judgment for the plaintiff. The case was taken to the county court, where the objection to the jurisdiction was again made and again overruled, and, final judgment being entered in favor of the plaintiff, the case was taken to the Supreme Court of the United States on a writ of error. In the Supreme Court it was contended, in favor of the jurisdiction of the state court, among other things, that, as the land carriage at the Isthmus was a substantial part of the voyage, the jurisdiction of the admiralty court did not attach, for the reason that a contract, to come within that jurisdiction, "must be wholly of admiralty cognizance, or else it was not at all within it," citing the case of The Pacific, 1 Blatchf. 569, Fed. Cas. No. 10,643. The Supreme Court held that the case presented was clearly one within the admiralty and maritime jurisdiction of the federal courts, and that the state court had no jurisdiction of the case in a proceeding in rem. The court did not consider the incidental land transportation at the Isthmus, or the breach of contract involved in the detention of the plaintiff on land, as impairing the admiralty jurisdiction over that part of the contract relating exclusively to a service to be performed on the high seas, and pertaining solely to the business of commerce and navigation.

I do not think the implication of the decision is to deny jurisdiction in the admiralty of the contract as a whole. The court had before it the entire contract, and it was upon the entire contract that the decision was based.

In a subsequent reference to this case by the Supreme Court, in the case of Insurance Co. v. Dunham, 78 U. S. (11 Wall.) 28, 20 L. Ed. 90, the court said:

"In the case of The Moses Taylor, it was decided that a contract to carry passengers by sea, as well as a contract to carry goods, was a maritime contract and cognizable in admiralty, although a small part of the transportation was by land; the principal portion being by water."

As I understand these two decisions, they sustain the contention that the District Court had jurisdiction in the present case.

NOTE.—Petition for certification of certain questions to the Supreme Court of the United States denied August 4, 1913.