## Case No. 11,527.

### RAFT OF CYPRESS LOGS.

[1 Flip. 543; 9 Chi. Leg. News, 26; 14 Alb. Law J. 319; 1 Cin. Law Bul. 258; 24 Pittsb. Leg. J. 50.] [1]

District Court, W. D. Tennessee. March 2, 1876.

ADMIRALTY—JURISDICTION—NAVIGATING RAFT.

A libel in rem cannot be maintained for services in navigating a raft of logs.

[Cited in Moores v. Louisville Underwriters. 14 Fed. 236; The Pulaski, 33 Fed. 384; The F. & P. M. No. 2, 33 Fed. 512, 513.]

Libel claimed for services as seamen and mariners employed in navigating a raft of cypress logs from New Madrid, Mo., to Memphis, Tenn., on the Mississippi river, and contained the usual averments as to length of service, good conduct and amount due. Claimants excepted upon the ground that the services were not maritime and that this court had no jurisdiction.

J. B. Clough, for libellants.
T. W. Brown, for claimants.

BROWN, District Judge. Locality is the test of jurisdiction only in cases of tort, and the mere fact that the services in question were rendered upon navigable waters is clearly insufficient. In actions of contract the agreement sued upon must be maritime in its character; it must pertain in some way to the navigation of a vessel, having carrying capacity and employed as an instrument of travel,

[1] [Reported by William Searcy Flippin, Esq., and here reprinted by permission. 14 Alb. Law J. 319, and 24 Pittsb. Leg. J. 50, contain only partial reports.]

trade or commerce, though its form, size and means of propulsion are immaterial. The Gen. Cass [Case No. 5,307].

If the service does not require some degree of maritime skill, it must contribute in some way to the navigation or equipment of a vessel, or to the necessities or comfort of its passengers. It is at least doubtful whether mere landsmen, such as barbers, musicians, surgeons or clerks, though employed upon vessels, can maintain suits in admiralty for their wages. 5 Pars. Shipp. & Adm. 184.

It is unnecessary here to consider whether a raft may not, for some purposes be the subject of admiralty jurisdiction. By the Roman law the word "ship" apparently included everything which floated upon the waters and was accessory to commerce. "Navim accipere debemus sive marinam, sive fluviatilem, sive in aliquo stagno naviget sive schedia sit." Dig. de Exercit. Act. Again, "Navigii appelatione, etiam ratis continenter." Dig. de Fluminibus, L. I. § 14. The word "schedia" seems to have represented what we term a "float," while "ratis" answers properly to our word "raft."

Under the French law the definition is almost equally broad. Says Emerig. Assur. c. 4, § 7, par. 1: "The word 'ship' (navire) includes every vessel of timber work able to float and to be carried upon the water. Boats and the smallest barks are comprehended in the same definition; even rafts are included."

"But," says Dufour (1 Droit Mar. p. 115): "These definitions must be accepted with caution. They are in fact true only in a certain sense and in certain given situations. Thus they would be correct in the point of view of the law of 1791 [1 Stat. 199], which forbids, save in case of superior force, the lading or unlading of ships outside the limits of harbors where custom houses are established." The author then proceeds to show, from opinions of the court of cassation, that those only are ships within the meaning of article 190 of the Code of Commerce, which have "an equipment, a crew, a special service, a particular industry." Such only are subject to legal process, or affected by the liens of commerce.

So De Fresquet (Des Abordages Maritimes), defines ships as "every construction designed for the carriage of passengers or freight in navigation," and in enumerating those collisions which are not considered as maritime by the Commercial Code, mention such as occur "with cribs of timber (trains de bois) floating upon a river." Page 6.

With the single exception of the case of A Raft of Spars [Case No. 11,529], I know of no English or American authority holding that courts of admiralty have jurisdiction over rafts. In this case, the district court of Southern New York sustained a libel in rem to recover for salvage services in rescuing a raft of spars, drifting out to sea through the Narrows of New York harbor. No authorities are cited, and the learned judge briefly states it as his opinion that the service was clearly an act of salvage. By a great weight of authority, however, salvage, in the sense in which the term is used in the maritime law, can only be claimed for the rescue of a ship or its cargo, or portions of the same.

In the case of Nicholson v. Chapman, 2 H. Bl. 254, it was held that a person, who, finding a quantity of timber loosened from the bank of a navigable river, and carried by the tide to a considerable distance, conveyed it to a place of safety, had no lien for his trouble or expense, and was liable to an action of trover upon demand of the owner, though nothing was tendered him by way of compensation. The case was clearly distinguished from cases of salvage, and it was held that the finder did not even have a common law lien for his services. In the similar case of Raft of Timber, 2 W. Rob. Adm. 251, it was held the high court of admiralty had no jurisdiction.

The question was also elaborately considered by Mr. Chief Justice Taney in the case of Tome v. Four Cribs of Lumber [Case No. 14,083], in which it was held that a libel would not lie for the rescue of a raft of lumber, driven from its anchorage by a high wind and tide; and following Nicholson v. Chapman [supra], that the person rescuing it acquired no lien, had no right to retain it from the owner, and that his only remedy was an action at law to recover the value of the services rendered. In the language of the learned justice: "They are not vehicles intended for the navigation of the sea, or the arms of the sea; they are not recognized as instruments of commerce or navigation by any act of commerce; they are piles of lumber and nothing more, fastened together and placed upon the water until suitable vehicles are ready to receive and transport them to their destined ports, and any assistance rendered these rafts, even when in danger of being broken up or swept down the river, is not a salvage service in the sense in which that word is used in courts of admiralty."

In the recent case of The W. H. Clark [Case No. 17,482], Judge Hopkins, of the Western district of Wisconsin, intimated his opinion that a raft could not be held liable in admiralty for a collision, though the question did not necessarily arise in that case.

Passing it by, then, as unnecessary to the determination of the question here involved, I find no case favoring the theory insisted upon by libellants, that raftsmen are seamen within the definition of the maritime law, or entitled to sue in this court for their wages. All the cases cited by their learned counsel are of small crafts engaged in petty commerce. and although, in some instances, other work was done, such as the laying of stone, it was regarded by the court as incidental and subsidiary to the navigation of the vessel, and the libellant was permitted to recover upon the ground the principal service was one requiring maritime skill. The Mary [Case No. 9,190]; The Canton [Id. 2,388]; The May

Queen [Id. 9,360]; The Highlander [Id. 6,476].

As observed by Judge Sprague, in the case of The Canton, a small vessel carrying stone to Boston: "They must have steered, furled and reefed the sails, and brought the vessel to anchor. They must have been able to haul, reef and steer, an ordinary criterion of seamanship. They ought also to have known the rules of navigation in regard to collisions, and had they negligently run afoul of another vessel the owner would have been held responsible for the damage."

While some previous knowledge may be useful, if not necessary, to the proper steering of a raft, it is rather the knowledge of the currents and eddies of a particular locality than maritime skill, properly so-called. Admit that a raftsman may in any case sue in rem for his wages, and it follows, logically, that he may do so whatever be the size of the raft or the distance it is transported. Indeed, it is difficult to see why he might not also attach for the navigation of unconnected logs, and courts of admiralty thus be thrown open to the log-drivers of Maine and Michigan, whose business is to "run" logs down streams, navigable for that purpose, to booms prepared to receive them. Again, if a raft be a vessel to the extent claimed, are not the laborers who make it up and the dealers who furnish its crew with provisions also entitled to a lien as material men?

The act of May 3, 1802 (1 Brightly, Dig. 304 [2 Stat. 192]), providing that persons navigating the Mississippi river in rafts shall be considered seamen so far as to be entitled to the relief extended by law to sick and disabled seamen has no bearing upon the case, as the act, by its terms, applies only to rafts navigated to New Orleans. This section, moreover, seems to have been repealed. Two sections have been re-enacted in the Revised Statutes, while the remainder of the act falls within the terms of the general repealing section of the revision (section 5596), and even if the act were still in force and applied to the raft in question, it does not necessarily follow that the raftsmen would be such seamen as to be entitled to sue in rem in admiralty. I should deem it inequitable to subject property of this nature to the tacit liens of the maritime law, particularly if it had passed into the hands of an innocent purchaser.

The libel does not set forth a maritime contract, and it must be dismissed, but without costs, the want of jurisdiction appearing upon the face of the pleading.