## THE PULASKI.

*(District Court, E. D. Michigan.* January 9, 1888.)

ADMIRALTY—JURISDICTION—MARITIME CONTRACTS—STORAGE OF GRAIN IN VESSEL.

A vessel, at the close of navigation upon the lakes, received on board a cargo of wheat, under an agreement to hold the same in storage during the winter, and, if not discharged by the shippers upon the opening of navigation in the spring, to transport the same wherever ordered, for two and a quarter cents per bushel storage, and the current rates of freight for transportation. *Held,* that the contract was not maritime, and the court of admiralty had no jurisdiction of a suit brought for damages received during the winter by improper storage.

*(Syllabus by the Court.)*

In Admiralty. On exceptions to libel.

The libel averred that on December 7, 1886, libelant shipped on board the Pulaski, at the port of Detroit, about 24,000 bushels of wheat, to be held and stored on board said schooner until the opening of navigation in the following spring, unless sooner discharged by the shippers;

and, if not discharged, to transport the wheat to Buffalo, or other port, for the consideration of two and a quarter cents per bushel for proper storage during the winter, and the going freight for transportation to Buffalo, or other port, after the opening of navigation. The libel further averred that, by reason of the hatches not being properly covered and protected, moisture gathered in the wheat, causing the same to become heated, and damaged to the amount of about $700. Claimant demurred, upon the ground that the cause of action was not within the jurisdiction of the court, and that there was no lien upon the schooner for such breach of contract.

*F. H. Canfield*, for libelant.

*H. H. Swan*, for claimant.

BROWN, J. I am informed that contracts of this description have become quite common upon the lakes, the shipper thereby finding a convenient and cheap storage of his wheat upon the vessel, and the latter a profitable employment during the idle season. If the storage were a mere incident to the transportation, as, for instance, if the wheat were taken on board with the understanding that the vessel should sail as soon as a tug or consort should be procured, or as soon as the ice should leave the harbor, I should have no doubt that the vessel would be liable for any damage received by the cargo by reason of improper storage while awaiting departure. In such case, the storage being a mere incident of the transportation, the whole contract would be adjudged to be maritime, and a suit would lie in the admiralty for any damage occasioned after the cargo was received on board. But, in this case, the contract is primarily for storage, and the transportation is a mere contingency, possible or probable, in the future. The wheat is received subject to the order of the shipper, who may demand a redelivery the next day; and, even if it were definitely understood that the wheat was to be transported upon the opening of navigation to a distant port, the fact that a separate price was charged for the storage during the winter would tend to show that, in fact, there were two separate contracts, one only of which was maritime. The fact that the warehouse is a ship, or is water-borne, is of no importance, since floating warehouses are not uncommon upon the western rivers, and by no means unknown upon the seaboard. To be the subject of an admiralty lien for a breach of contract, the vessel must be, at the time, engaged in commerce and navigation, or in preparation therefor, (*The Hendrick Hudson*, 3 Ben. 419,) and the service must be maritime in its nature, (*A Raft of Cypress Logs*, 1 Flip. 543; *Gurney* v. *Crockett*, Abb. Adm. 490; *The John T. Moore*, 3 Woods, 68.) This case is really of the same nature as a claim for winter wharfage, passed upon in this court, and affirmed by the circuit court, in *The Murphy Tugs*, 28 Fed. Rep. 429.

The exceptions must be sustained, and the libel dismissed.