## THE F. & P. M. No. 2.

### CARTIER v. THE F. & P. M. No. 2.

*(District Court, E. D. Wisconsin.  January 17, 1888.)*

COURTS—FEDERAL JURISDICTION—ADMIRALTY—ACTION FOR DAMAGE TO LOGS.
  The district court has jurisdiction of an action *in rem* against a vessel for damaging a raft of logs while in navigable waters.

In Admiralty.  Libel for damages.
*Markham, Williams & Bright,* for libelant.
*E. Mariner* and *F. M. Hoyt,* for respondent.

DYER, J.  This is a suit in admiralty, brought by the libelant, a citizen of Michigan, against the steam-vessel F. & P. M. No. 2, owned and employed in navigation by the Flint & Pere Marquette Railroad Company, to recover the value of a raft of logs, which, on the eighteenth day of September, 1886, were being towed by a tug from a point on the east shore of Lake Michigan to Ludington.  The libel alleges that the raft or boom of logs was being towed into the harbor of Ludington; that the steamer, in entering the same port, negligently ran into the raft, striking it with such force as to break the boom, and scatter the logs; and that, in consequence of the collision, many of the logs floated out into the lake, and were lost.  The libel further alleges, and the answer admits, that the steamer was duly enrolled and licensed for the coasting trade, and employed in navigation and commerce upon the lakes within the admiralty jurisdiction of the United States.  The defense made by the answer is that the collision occurred through the negligence of the tug which had the logs in tow.  A motion is now made by the respondent to dismiss the libel for want of jurisdiction.  As the place where the collision happened was upon public navigable waters, no issue arises concerning the question of locality as a ground of jurisdiction.  The point presented is whether the raft of logs in question is the subject-matter of maritime jurisdiction, so as to enable the owner to maintain a suit in admiralty against the steamer, to recover for the injury and loss sustained.

In the case of *The W. H. Clark,* 5 Biss. 308, Judge HOPKINS expressed a serious doubt whether "admiralty jurisdiction could be sustained *against* a raft of lumber," in a case of collision; and cited *Tome* v. *Lumber,* Taney, 547, quoting Chief Justice TANEY's remarks in that case, that cribs of lumber "are not vehicles intended for the navigation of the sea.  They are not recognized as instruments of commerce or navigation by any act

of congress; they are piles of lumber, and nothing more, fastened together and placed upon the water." But in the case of the *W. H. Clark*, it was not necessary for Judge HOPKINS to decide, and he did not decide, the question whether, in a case of collision, a remedy in admiralty could be enforced either in favor of or against a raft of lumber, for the reason that the steamer having the raft in tow was found in fault, and therefore liable for the injury done to the boat collided with. What he said, therefore, on the subject of jurisdiction, so far as it related to the raft of lumber, was *obiter*. In *Tome* v. *Lumber, supra*, an attempt was made to maintain a suit in admiralty, for an alleged salvage service in rescuing certain rafts of lumber which had been driven from their anchorage in the Susquehanna river, and were found floating down the stream. It was there held that rafts *anchored in a stream* are not the subjects of admiralty jurisdiction, *where the right of property or possession is alone concerned;* that they are piles of lumber, and nothing more, placed upon the water until suitable vehicles are ready to receive and transport them to their destined port; and that any assistance rendered to them, even when in danger of being broken up and swept down the stream, is not a salvage service, in the sense in which that word is used in courts of admiralty. As will be observed, the action was a possessory one, instituted in a court of admiralty by the owners of the lumber, to recover it from a party who was seeking to hold it for salvage service; and it was held that the remedy of the owners to regain possession was an ordinary action of replevin. Clearly, the case can have no greater application to the question under consideration, than its particular facts and the character of the action warrant.

In the case of *A Raft of Cypress Logs,* 1 Flip. 543, it was held that a libel *in rem* cannot be maintained for services in navigating a raft of logs. That was a case of contract, and it was held that "in actions of contract the agreement sued on must be maritime in its character; it must pertain in some way *to the navigation of a vessel,* having carrying capacity and employed as an instrument of travel, trade, or commerce, though its form, size, and means of propulsion are immaterial." *The Gen. Cass,* Brown, Adm. 334. As a raft is not a ship or vessel, it was held that the contract of service upon which the suit was based, was not a maritime contract, and, therefore, that a court of admiralty had not jurisdiction of the action. But, in deciding the case, Judge BROWN was careful to say that it was unnecessary "to consider whether a raft may not, for some purposes, be the subject of admiralty jurisdiction."

*Thackeray* v. *The Farmer,* Gilp. 524, was also a case of contract, and it was there decided that a contract for the payment of labor on board of a vessel employed in carrying fuel to the city of Philadelphia from the opposite shore of the Delaware river, could not be enforced by a suit *in rem,* in the admiralty. It may well be doubted whether, in the present state of the law of admiralty, this case would now be accepted as authoritative, even upon the question there decided. It is worthy of notice that it arose when the admiralty jurisdiction was greatly restricted,—in fact confined to waters within the ebb and flow of the tide. In any event,

the decision of Judge Hopkinson does not, in principle, go to the extent of forbidding jurisdiction in admiralty, in a case which might be supposed, of collision upon the waters of a navigable river, between such a craft as is described in that case, and a duly-enrolled and licensed ship engaged in ocean commerce.

In *Jones* v. *The Coal Barges*, 3 Wall. Jr. 53, the subject of dispute was a collision between two coal barges loaded with coal, one of which was floating down the Monongahela river, and ran foul of the other, which was fastened to the shore, but standing out further in the stream than she had a right to be. They were described as open chests or boxes, which were made for transporting coal, were floated by the stream, and sold for lumber at the end of the voyage; and it was held that a remedy *in rem* against one by the owner of the other, for its contracts or torts, could not be enforced in the admiralty. Stress was laid on the fact that these barges were not enrolled and licensed for the coasting trade, under the provisions of the act of February 26, 1845, then in force, which extended the jurisdiction of courts of admiralty to the lakes and other navigable waters.

But, admitting that a raft of lumber or logs is not the subject of salvage service, as was held in *Tome* v. *Lumber*, *supra*, because, as is said in some of the cases, "salvage," in the sense in which the term is used in the maritime law, can only be claimed for the rescue of a ship or its cargo or portions of the same; and conceding that the right of possession of such property must be asserted in a common-law action, and not in a suit in admiralty; admitting also the law in relation to contract service to be as stated in the cases cited from 1 Flip. 543, and Gilp. 524,—does it follow that the owner of a raft of logs which is in tow of a tug, presumptively duly enrolled and licensed, and which is run into upon navigable waters by a steamer also duly enrolled and licensed, and engaged in interstate commerce, may not enforce his remedy in admiralty, either *in rem* against the boat, or *in personam* against the owner? Why may not such remedy be enforced, as well in such case, as against either the steamer or the tug, if the collision had occurred between them?

The jurisdiction of the admiralty in cases of tort, depends upon locality. Conk. Adm. 21. This collision occurred upon navigable waters, over which, confessedly, the admiralty has jurisdiction. As a subject of commerce, the raft or boom of logs was being transported from one port to another in tow of the tug. Its relation to the tug was somewhat in the nature of cargo. Both the raft and the steamer which inflicted the injury were, at the time, actually engaged in navigation. The decision in *Jones* v. *The Coal Barges* turned upon the construction placed on the act of 1845, which confined the jurisdiction of admiralty courts on the lakes and rivers, to "matters of contract and tort in, upon, or concerning steamboats and other vessels of twenty tons burden and upwards, *enrolled and licensed for the coasting trade*." But, since that decision, the jurisdiction of courts of admiralty has been greatly extended. In the case of *The Eagle*, 8 Wall. 15, it was held that the act of 1845 was inoperative and nugatory, with the exception of the clause therein which gave to either party the right of trial by jury, when requested, and that the district

courts could take cognizance of all civil causes of admiralty jurisdiction upon the lakes and waters connecting them, the same as upon the high seas, and bays and rivers navigable from the sea. The eighth subdivision of section 563, Rev. St. U. S., declares, in substantially the language of the opinion in the case of *The Eagle,* that the district courts shall have cognizance of all civil causes of admiralty and maritime jurisdiction; and section 3, *c.* 1, Rev. St., defines the word "vessel," as it is used in the statutes, as including "every description of water-craft, or other artificial contrivance used, or capable of being used, as as a means of transportation on water."

In *Ex parte Boyer,* 109 U. S. 629, 3 Sup. Ct. Rep. 434, it was decided that a court of admiralty has jurisdiction of a suit *in rem* in a case of collision between two canal-boats navigating a canal within the body of a state; and that, too, although the libelant's boat was bound from one place in a state to another place in the same state.

In the case of *The Rock Island Bridge,* 6 Wall. 213, a libel was filed against the bridge, for alleged damages done to two steam-boats, and it was held that there was no foundation for a proceeding *in rem,* because the bridge was fixed and immovable, like a wharf or real estate, and was therefore not the subject of maritime lien. But Mr. Justice FIELD says, speaking for the court, that "there is no doubt * * * that the jurisdiction of the admiralty extends to all cases of tort committed on the high seas, and, in this country, on navigable waters. For the redress of these torts, the courts of admiralty may proceed *in personam;* and, when *the cause of the injury is the subject of a maritime lien,* may also proceed *in rem.*" Further, he says: "A maritime lien can only exist upon movable things engaged in navigation, *or upon things which are the subjects of commerce on the high seas or navigable waters.* It may arise with reference to vessels, steamers *and rafts,* and upon goods and merchandise carried by them." The case at bar, it will be observed, is one against a steamer, confessedly the subject of a maritime lien.

In *Atlee* v. *Packet Co.,* 21 Wall. 389, it was held that a court of admiralty had jurisdiction of a suit *in personam* by the owner of a barge against a party who had built a structure in the navigable channel of the Mississippi river, which had been the cause of injury to the barge. See, also, *Railroad Co.* v. *Tow-Boat Co.,* 23 How. 209, wherein Mr. Justice GRIER said: "The jurisdiction of courts of admiralty, in matters of contract, depends upon the nature and character of the contract; but in torts it depends entirely upon locality." In this case a railroad company was held liable in a suit in admiralty for an injury done to a vessel by piles which had been driven and left in the bed of a navigable river.

In the case of *The Arkansas,* 17 Fed. Rep. 383, it was decided, in a well-considered opinion by Judge LOVE, that where a vessel is injured by collision with a structure unlawfully placed in the navigable channel of a river, the party creating the obstruction may be sued for the injury in an action *in personam,* in a proper court of admiralty; but the owners of the vessel cannot, in such a case, proceed *in rem* against the solid structure, whatever it may be, because there can be no maritime lien

upon such a structure, to be enforced in the admiralty by its seizure and sale. Further, that where a structure lawfully created in the navigable channel of a river is injured by a collision caused by the negligent management of a vessel, the owner of such structure may proceed in an admiralty court, by action *in personam* against the owners of the vessel, or *in rem* against the vessel. If this be the law,—and I have no doubt it is,—no reason is perceived why the owner of a raft of logs which is in course of transit on navigable waters, may not proceed *in rem* against a boat or vessel which negligently runs into and destroys or injures the raft.

In *Muntz* v. *Timber*, 15 Fed. Rep. 555, it was decided that a raft of timber is subject to the jurisdiction of the admiralty court, in the matter of salvage.

Many other cases might be cited, showing the extension, in various directions, of the admiralty jurisdiction, since the days of the old tidewater doctrine,—cases that include injuries to barges in tow of other vessels, ferry-boats, scows, yachts, pleasure boats, and other craft which would have had no recognition as "ships or vessels," in the earlier history of admiralty law in this country. But further discussion of the question seems superfluous, as I have no doubt, in the present state of judicial decision on the subject, this court, as a court of admiralty, has jurisdiction of the controversy set forth in the libel and answer in this case.