JENKINS, Circuit Judge,
upon this statement of the case, delivered the opinion of the court.
The allowance of a maritime, lien for services and supplies had its origin in the necessities of trading vessels visiting distant ports, where the master and the owner would presumably be without credit to obtain them. The lien was created for the benefit of the vessel, and not for the benefit^of the creditor, and to enable the vessel to pursue her voyage, and because the ship is made to “plow the sea, and not to rot by the walls.” Henry, Adm. § 43; The St. Jago De Cuba, 9 Wheat. 409. Such liens take precedence of antecedent charges upon the vessel because of the paramount necessity for the service and the supplies, which tend to the preservation of the res. The lien was not allowed for necessary supplies furnished at the home port of the vessel, where presumably the owner and the master had credit, although the subject-matter of the contract to furnish them was of a maritime nature. The water-craft laws of Illinois allow a lien for supplies in the home port, which the admiralty, the subject-matter being maritime and within its jurisdiction, will recognize and enforce. The question here is therefore this: whether the contract for the supply of coals was maritime in its nature. If not, we need not stop to consider the interesting question argued at the bar, whether this steam dredge was a vessel, and subject to the jurisdic *556 tion of the admiralty. We abstain, therefore, from a review of the-many cases to which we are referred, not altogether at agreement, nor wholly in accord with the principle underlying the jurisdiction of the admiralty, speaking to the question of admiralty jurisdiction over a steam dredge or like floating structure. It is perhaps pertinent to-suggest and sufficient to say, as was said in Cope v. Dock Co., 119 U. S. 625, 7 Sup. Ct. 336, that the fact that a structure floats upon the water does not of itself make it a ship or vessel; for then a floating church or a floating barroom or a floating circus would come within the admiralty jurisdiction,—a conclusion which cannot be tolerated. The thing, the structure,—by whatever name it may be known,—must be engaged in, or in some sense related to, commerce and navigation. The decisions holding that a steam dredge is within the admiralty' jurisdiction may perhaps be rested upon the ground that a dredge is not only a floating structure upon the waters, but, as stated by Judge Pardee in The Alabama, 22 Fed. 449, is accompanied by a scow, and that the scow and the dredge are to be deemed one movable thing upon the waters, engaged in a common enterprise, and carrying the excavated earth by water transportation, and so engaged in navigation and related to commerce. Judge Pardee observes, however, that “the dredge boat by itself might not be up to the test.” In like manner, the supreme court, in the case cited, spoke of the case of The Mac, 7 Prob. Div. 126, as going somewhat to an extreme in defining the meaning of the terms “ship” and “vessel,” and said that a “hopper barge was a navigable structure used for the purpose of transportation.” Here the floating structure was not operated for the maritime transportation of the material excavated by scows or barges, but it discharged upon adjacent land, and through a line of adjustable pipes, the earth sucked up from the bed of the lake. It is insisted that here is no element of navigation beyond the fact, which is not controlling, that the thing was a floating structure upon the water, and therefore such structure is not within the admiralty jurisdiction. The question is interesting, but we do not think it necessary to pursue it.
Upon the assumption that the structure in question is a ship or vessel, and within the admiralty jurisdiction, that jurisdiction will not be asserted to enforce a contract touching the ship, unless such contract is maritime in its nature. Insurance Co. v. Dunham, 11 Wall. 1. The admiralty deals alone with things pertaining to the sea. We declared in The Richard Winslow, 34 U. S. App. 542, 18 C. C. A. 344, and 71 Fed. 426, that “a maritime contract must therefore concern transportation by sea. It must relate to navigation and to maritime employment. It must be one of navigation and commerce on navigable waters.” It was there pointed out that not every contract having reference to a ship is within the admiralty jurisdiction, but only such as relate to maritime employment, such as pertain to the navigation of a ship or assist the vessel in the discharge of a maritime obligation. It is not enough that the service is to be done upon the sea or with respect to the ship. It must relate to trade and commerce upon navigable waters. The coals furnished by libelant were supplied to the dredge while it was engaged in its work for the Illinois Central Railroad 'Company, and to enable it to perform that work, which was “to fill in earth for its railroad purposes behind a line of *557 piling on its grounds on the lake front in Chicago.” By means of its cutting apparatus, the earth on the bed of the lake was dug up, loosened, and disintegrated, and, with the adjacent water, sucked up into and through a centrifugal pump, and thence discharged through a continuous line of adjustable pipes to the place of deposit upon the adjacent shore. This is not a maritime employment. „ The fact that the dredge floated upon navigable waters is not controlling. The •dredge in the performance of that contract was not engaged in navigation, nor even in the marine transportation of the earth dug from the bed of the lake. To the contrary, a peculiar mechanism dispensed with the necessity of marine transportation. The employment related solely to the land, to the creation of an embankment upon the land for the use of a railway upon the land. The only possible relation to the sea in this employment was in this: that for the purpose of obtaining the earth, and as a necessary incident thereto, the bed of the lake was dug out, and thereby the channel was deepened. That was not, however, for the purposes of navigation. It is not suggested that vessels engaged in navigation frequented the place; that wharves were constructed or designed; or that the excavation was for the purpose of or in aid of navigation. The work was done in and for the ■construction of an embankment upon the land, and for railroad purposes. The earth was taken from the bed of the lake because more convenient to the place of deposit, and less expensive than when brought from a distant point on land. The effect upon the channel was incidental and subordinate. The work had no possible relation to marine transportation. It is of no moment that the structure floated upon the water, and dug out the bed of the lake. That does not give marine character to this employment. The admiralty deals with vessels which “plow the sea,” and with contracts touching navi.gation. In The Bichard Winslow, supra, we held that a contract for storage of grain during the closed season of navigation was not maritime. The present case falls within the principle of that decision. It may be that this structure could engage in a maritime service, and its maritime engagements brought within the jurisdiction of the admiralty. It is enough to say that in the performance of its contract to plow the prairies of the state of Illinois, or in the construction of a railway embankment upon land, to dig up the bed of the lake, and shoot the earth through tubes for deposit on the land adjacent, it was not so employed. The supplies furnished to enable the dredge to perform a contract not maritime cannot attain to the dignity of a maritime lien.
It is of no moment to say that the coals supplied were furnished to the dredge from barges or scows, and that, therefore, there was maritime transportation. With equal propriety could it be asserted that supplies furnished by scows to a floating church, a floating drink shop, a floating dance hall, or a floating circus, gave to such enterprises a maritime nature. The question is not whether navigation was ■employed to supply the coals, but whether the dredge was engaged in commerce and navigation, so that the supplies furnished, being in aid •of navigation, can be charged as a maritime lien upon the dredge. We are of opinion that the libel was properly dismissed. Decree •affirmed.