McMASTER et al. v. ONE DREDGE.

(District Court, D. Oregon. July 8, 1899.)

1. MARITIME LIENS—VESSELS SUBJECT TO—DREDGE.
    A dredge capable of being moved from place to place on navigable waters, and of the transportation of machinery and sand and gravel taken from the bottom of rivers, is a vessel, and subject to maritime liens.

2. ADMIRALTY—JURISDICTION TO ENFORCE STATUTORY LIENS—CONTRACTS NOT MARITIME.
    A court of admiralty is without jurisdiction of a suit to enforce a lien unless it arises from a maritime contract, and a contract to build a vessel is not maritime, nor is it made so by a state statute giving a lien on the vessel for the labor done and materials furnished in its construction.[1]

3. SAME—CONTRACT FOR CONVERSION OF A· SCOW INTO A DREDGE.
    A contract for converting a scow into a dredge is one for the building of the dredge, and is not maritime; hence a court of admiralty is without jurisdiction of a suit to enforce a lien on the vessel given the builder by statute.

This is a suit in rem in admiralty to enforce a lien upon a dredge.

A. King Wilson, for libelants.

A. C. Emmons and Williams, Wood & Linthicum, for defendant.

BELLINGER, District Judge. This is a libel in rem against a dredge owned by the Portland Sand & Contract Company, and grows out of a contract entered into, in July last, between that company and the libelants, which contract, omitting the formal parts, is as follows:

"This agreement, made and entered into by and between Christenson-Mc-Master Machinery Company, of Portland, Oregon, as party of the first part, and the Portland Sand Company, of the same place, as party of the second part, witnesseth, that the party of the first part, for and in consideration of the sum of six hundred forty and no/100 dollars, U. S. gold coin, to be paid as hereinafter specified, agrees to fit up the old dredging machinery belonging to the party of the second part, and put in working order, as follows: We to furnish all necessary woodwork; furnish one 60-ft. ladder, with carrying wheels, and new foot sheave, with large flanges; repair all old links for chain; put in two spuds 10″x10″x36 ft. long, using old points on same; fit up old hand derrick, and furnish woodwork for same; do all piping; install all machinery, except such as may be furnished by other parties; party of the second part to

────────────────────

[1] For jurisdiction of admiralty to enforce maritime liens created by state laws, see note to The Election, 21 C. C. A. 21.

deliver all their old machinery at the shops of the party of the first part; party of the first part to paint all machinery furnished or repaired by them, and to do all work in first-class, workmanlike manner, and all materials furnished by them to be of good quality; the said party of the first part agreeing to turn over the dredge to the party of the second part in good working order, party of the second part to furnish all buckets and bolts for same, top driving sheave, and necessary chain; the work to be completed by the party of the first part within three weeks from date. The party of the second part agrees to pay to the party of the first part six hundred forty and no/$_{100}$ dollars ($640.00) U. S. gold coin as soon as the above work has been completed and tested and accepted."

It is claimed that the parties in good faith performed this contract, and that they are entitled to a lien upon the dredge for the contract price, together with some further repairs to the dredge in the sum of above $50. The testimony shows that, at the time this contract was made, the sand company owned a scow, and that the purpose of the contract was to convert this scow into a dredge. The scow had never been used as a dredge, but was merely a wood scow or barge. The machinery upon which the repairs mentioned were made and the furnishings provided had never been on the scow, but were a necessary part of the equipment and appliances required for her conversion into a dredge.

It is claimed in behalf of the claimant that the dredge, when completed, is not a vessel; so as to give to a court of admiralty jurisdiction of a claim for materials or other supplies. It is conceded that in numerous cases steam dredges have been held to be vessels, but the point is made that in all these cases the dredges were employed in deepening the channels of navigable waters as an incident to navigation, and that upon this theory the courts in those cases held them to be vessels, and subject to liens. An examination of the cases cited leads to a different conclusion. In the case of The Pioneer, 30 Fed. 206, a steam dredge is held to be a vessel, and as such subject to a maritime lien for supplies, because she is constructed so as to move from place to place upon navigable water, and transport a steam shovel and engine, etc. It is true that the court in this, as in some of the other, cases, says that it is to be observed that the shovel, engine, etc., are to be devoted to deepening the channels of navigable waters, an occupation in itself incident to navigation. But the inference is that this last consideration, if it influenced, was not decisive of, the ruling made. The reason given, as already stated, for the holding that the dredge was a vessel, and subject to a lien, is because she was constructed so as to move from place to place upon navigable waters.

In the case of The Alabama, 22 Fed. 449, a dredge used in the business of digging earth out under the water to deepen channels of navigation, and in depositing such earth in scows, which are then towed to the dumping grounds, unloaded, and then towed back, is held within the admiralty jurisdiction, upon the ground that the scows and dredge are in law one vessel, whose business is largely navigation and water transportation.

In the case of Saylor v. Taylor, 23 C. C. A. 343, 77 Fed. 476, it is held that a steam dredge engaged in deepening navigable waters is

subject to a lien. It does not appear that the decision is based upon the fact that the dredge was used in an occupation incident to navigation, but rather, as I take it, on the fact that, while engaged in, and as a part of, this business, she was "capable of being towed from place to place."

So, in the case of The Public Bath No. 13, 61 Fed. 692, a bath house built on boats, and designed for navigation and transportation, is held to be within the admiralty jurisdiction.

In the case of The International, 83 Fed. 840, it is held that dredges and scows, used, or capable of being used, as a means of transportation, are subject to the admiralty jurisdiction.

So, too, in McRae v. Dredging Co., 86 Fed. 344, the same general doctrine is applied. In this case the court says:

"A dredging vessel, designed to facilitate navigation, by going from place to place, to be used in deepening harbors and channels, and removing obstructions from navigable rivers, and to bear afloat heavy machinery and appliances for use in that class of work, may commit, or be injured by, a marine tort, and she may become subject to a maritime lien for salvage. She has mobility, and her element is the water. She can be used afloat, and not otherwise. She has carrying capacity, and her employment has direct reference to commerce and navigation."

In this case, while the fact that the employment of the dredge has direct reference to commerce and navigation is referred to, yet, as already stated with reference to one of the cases cited, the decision of the court does not appear to have been based upon that consideration. I conclude, therefore, that a dredge capable of being moved from place to place on navigable waters, and of the transportation of machinery, or sand and gravel taken from the bottom of rivers, is a vessel, and may be subject to a lien.

The case of In re Hydraulic Steam Dredge Co. No. 1, 25 C. C. A. 628, 80 Fed. 545, is not an authority against this conclusion. That is a case where a hydraulic dredge, used in sucking up material from the bottoms of rivers by means of a pipe and pump and discharging the same upon the shore, is, in effect, held not to be a subject of admiralty jurisdiction. But in this case the dredge was not used for the purposes of navigation. Its position was a stationary one while it was at work. The court says:

"Here the floating structure was not operated for the maritime transportation of the material excavated by scows or barges, but it discharged upon adjacent land, and through a line of adjustable pipes, the earth sucked up from the bed of the lake."

In this case the dredge is adapted to navigation, and was designed for use in the transportation of sand and gravel as articles of commerce. It is wholly immaterial that this sand and gravel so transported is dredged from the bottom of the river. It may as well be taken from the adjacent uplands. It can make no difference, as to the occupation of the dredge in the transportation of this material, where it was obtained. The fact that gives to the dredge the character of a vessel is its use in the transportation of the material which it was designed to carry.

The second objection to the claim of libelants is a more serious one; that is, that the contract in question was one for the original

construction of the vessel, and is therefore not a maritime contract, of which a court of admiralty can take cognizance. The lien given by state statutes can only be enforced in admiralty when the contract out of which the lien arises is maritime in its nature. A court of admiralty has no jurisdiction of a suit in rem against a ship for work, labor, and materials done and furnished towards the building of a ship, even though the law of the state gives a lien upon the ship therefor. The Norway, 18 Fed. Cas. 435 (No. 10,359).

The contract for building is not a maritime contract, and does not involve rights and duties pertaining to commerce and navigation, in the sense of the law giving jurisdiction to the admiralty; and so, where a hull, completed at the place of launching, was towed with her spars on deck to another port, where her masts were stepped, and the vessel put in condition for navigation, it was held that the work was done in building the vessel, and that admiralty had no jurisdiction. The Iosco, 13 Fed. Cas. 89 (No. 7,060). A state statute is only effective to attach a lien to a contract originally maritime in its nature. It cannot make a contract maritime which is not so originally. The Pacific, 9 Fed. 120.

The case of The Count De Lesseps, 17 Fed. 460, is a case where a floating scow had been constructed in New Jersey, and towed to Pennsylvania, where machinery and material were furnished upon contract with the building contractors, who had undertaken to construct the scow with such machinery. It was held that the machinery and material were furnished in the original construction of the vessel, and that the admiralty was without jurisdiction to enforce a lien therefor.

The case of The Paradox, 61 Fed. 860, is similar to the case last cited. Here it is held that a contract for the machinery of a vessel is not enforceable in admiralty, where such machinery was supplied for the completion of the construction of the vessel, and such vessel was not then completed for the purpose for which she was intended. The court says:

"When the vessel is completed for the purpose intended, then the vessel is 'built,' and not till then, whether it be a steamer, a sailing vessel, a barge, a scow, or a mere float designed to support and transport a bath house; and whatever is supplied to such a vessel for the purpose of making it what it was intended to be, and to enable it to enter upon the kind of business or navigation intended, is a part of the 'building' of the vessel."

Tried by this criterion, the work and labor and materials furnished in this case were for the building of the vessel. It can make no difference whether the scow was already built, and had theretofore been used for another purpose, or whether it was newly constructed for the purposes of a dredge. The purpose of this contract was to build this scow into a dredge. As a mere wood barge, the things done were not required. It was only for the purposes of a dredge, which, in its relation with the scow, was a new thing, that the work and labor in this case were performed, and the materials furnished, and this is a building of the dredge, within the rule adopted in the cases cited. What was done and supplied in this case was for the purpose of making the vessel what it was intended to be, and what it had

theretofore not been,—a dredge, a thing with which the wood scow, as such, had no relation. This contract, therefore, is not a maritime contract. It was a contract to convert the wood scow into a dredge, which is precisely the same as one to build a dredge. The remedy of the libelants to enforce the lien given by the state statute is in the state courts. This court is without jurisdiction. Ordered that the libel be dismissed.