## SOUTH FLORIDA DREDGING CO. v. AMERICAN STEEL DREDGE NO. 77.

(District Court, S. D. Florida, at Miami. February 19, 1923.)

No. 1655.

Maritime liens ⬳11—No lien for supplies and repairs to dredge furnished while dredging drainage canal.

A hirer of a dredge, who furnished supplies and made repairs while using the dredge in the construction of a nonnavigable drainage canal, has no maritime lien which will support the jurisdiction of admiralty, though the dredge was afterwards found in navigable waters, as the contract was not maritime in its nature, and the services and supplies had no immediate relation to commerce by water or to navigation.

In Admiralty. Libel by the South Florida Dredging Company against American Steel Dredge No. 77. On exceptions to the libel. Exceptions sustained, and libel dismissed.

Baxter & Chancey, of Ft. Lauderdale, Fla., for libelant.
Semple & Taylor, of Miami, Fla., for respondent.

CLAYTON, District Judge. To recover for supplies furnished and repairs made to the American Steel Dredge No. 77, the South Florida Dredging Company, a corporation, libeled the dredge.

The libelant contracted with the owners of the dredge to construct an inland canal for the purpose of drainage. Incidentally a roadbed was to be constructed, of the earth removed from the canal, along the side of the canal. At or about the time of the making of the contract mentioned the owner of the dredge entered into another definite contract with the libelant, whereby such owner agreed that the dredging company, libelant, should have the use of the dredge, and also that the dredging company, libelant, should make necessary repairs to the dredge in order to fit it for the use, furnishing the requisite supplies or materials and work, and that upon the completion of the canal the owners of the dredge should pay the libelant the sum of $2,500 for such supplies and work. It is not admitted that the canal ever became navigable, but it is admitted that when the canal was completed the dredge was floated out of its mouth into the bay near Cape Sable, where the vessel was found when libeled, and it was then in navigable waters. The evidence sustains the insistence that the canal was dug for drainage purposes only.

The owners of the dredge refused to pay the stipulated sum, and this libel was brought against the dredge. The respondent excepts to the libel, upon the ground that no maritime lien has been created upon the

---

vessel—that the facts do not constitute a case cognizable in admiralty.

It is manifest that the owners of the dredge became bound to pay the agreed sum of $2,500 for materials and repairs furnished and made to the dredge. However, this is not an action for damages on account of the breach of a contract, or for supplies and work and labor done. Nor is this a proceeding to enforce a lien created by the contract. On the contrary, the libelant asserts that it has a lien by virtue of maritime law, contending that a maritime lien attached when the craft became water-borne and was found in the navigable water.

In the argument the libelant conceded, and correctly so, that there is no maritime lien, unless such lien attached to the vessel when it became afloat in the navigable water. But the fact that it did become water-borne after the completion of the drainage canal cannot create a maritime lien, for such lien can arise only from the use of a vessel in commerce by water or in navigation. Such a lien attaches by operation of law only on appropriate facts showing such use of the vessel. The rights of the libelant and the duties of the respondent, so far as the case here is concerned, arise from the facts pertaining to such commerce and navigation and not otherwise. In no proper sense can it be said that any rights and duties growing out of the circumstances of this case should be regarded as directly or immediately connected with navigation or commerce by water. A review of the opinions and the supporting reasoning of a few of the adjudged cases bearing on the subject is convincing that the libelant has no maritime lien. People's Ferry Co. v. Beers, 20 How. 393, 15 L. Ed. 961; North Pacific Steamship Co. v. Hall Bros. Co., 249 U. S. 119, 125, 39 Sup. Ct. 221, 63 L. Ed. 510; The Iosco, Fed. Cas. No. 7,060; Edwards v. Elliott, 21 Wall. 532, 554, 555, 22 L. Ed. 487; Pacific Surety Co. v. Leatham & Smith Towing Co., 151 Fed. 440, 80 C. C. A. 670; and the other cases cited in Thames Towboat Co. v. The Francis McDonald, 254 U. S. 242, 41 Sup. Ct. 65, 65 L. Ed. 245.

Manifestly, the dredge was not a ship or vessel within the admiralty jurisdiction; and jurisdiction cannot be asserted to enforce a contract relating to the dredge where such contract is not maritime in its nature, or the services rendered and supplies furnished thereunder had no immediate relation to commerce by water or to navigation. Bouker Contract Co. v. Proceeds of Sale of Dredge Mach. (D. C.) 168 Fed. 428; Hydraulic Steam Dredge No. 1, 80 Fed. 545, 25 C. C. A. 628, 639, 640; The Steamboat Orleans, 11 Pet. (36 U. S.) 175, 9 L. Ed. 677.

It follows that the exceptions to the libel must be sustained, and the libel dismissed, for this court has no jurisdiction of the subject-matter of the controversy.