## THE MILWAUKEE.

(District Court, W. D. New York. October 15, 1926.)

Admiralty ⬥12.

Contract for storage of grain in vessel during winter after transportation was complete *held* not maritime contract, within admiralty jurisdiction.

In Admiralty. Libel by the Armour Grain Company against the steamer Milwaukee, claimed by the Great Lakes Transit Corporation. On exceptions to libel. Exceptions allowed.

Harry D. Thirkield, of New York City, and Thomas C. Burke, of Buffalo, N. Y., for libelant.

Brown, Ely & Richards, of Buffalo, N. Y., for claimant.

HAZEL, District Judge. Exceptions filed to the libel in this case against the steamer Milwaukee present the question of whether the contract for the use of the vessel for storage of grain at the port of arrival is a maritime contract, within the admiralty jurisdiction. The bills of lading specifically provide for shipment of the grain in good condition in holds 3 and 4 of the after deck of the vessel, and then state, "now in the port of Buffalo, N. Y., for storage at Buffalo, N. Y., * * * to be delivered in like good condition." Such a contract has frequently been held not to be maritime in its nature.

In two cases, The Pulaski (D. C.) 33 F. 383, and The Richard Winslow, 71 F. 426, 18 C. C. A. 344, it was specifically held that the fact that the warehouse, or the place of storage, was in a ship on navigable waters, standing alone, does not constitute an arrangement of which admiralty takes jurisdiction; that

.to make the vessel liable she must either be engaged in commerce and navigation or in the preparation thereof. In The Richard Winslow, supra, the Circuit Court of Appeals for the Seventh Circuit, Judge Jenkins writing the opinion of the court, decided that such a cause of action was not within the cognizance of admiralty; that, as in The Pulaski, decided by Mr. Justice Brown when he was District Judge, a contract for storage did not concern navigation, since it could. not take effect until after completion of the voyage, and had no relation to further transportation by the vessel.

Libelant, in opposition to this view, contends that the Circuit Court of Appeals for this circuit, Judge Hough writing the opinion, has substantially taken a contrary view in The Jungshoved, 290 F. 733. But I do not, on further investigation, so interpret its decision. In that case it was necessary to lighter the ship's cargo to await clearance of the wharf. While loading the lighter, she sank, and the cargo already aboard was destroyed. In answer to the contention that no warranty of seaworthiness of the lighter existed, since she was hired for storage, and not for carriage, the learned court said: "The implied warranty of seaworthiness exists whenever and wherever there is an undertaking to carry the goods for hire, in a vessel and on navigable waters."

In that case obviously the storage was an incident of the transportation, while in this case the transportation from Milwaukee to Buffalo was ended, and, being ended, the grain was to be taken for storage during the winter season. The bills of lading embody a dual contract, one for the transportation and the other for the storage. In The Pulaski, supra, the cargo was taken aboard at Detroit, to be held in storage on board the schooner until the opening of navigation, while here, as alleged, it was to be stored after the transportation was completed. The essential facts of The Richard Winslow, supra, were precisely the same as here, and the District Court (67 F. 259) said the transportation of the cargo for storage "may precede the storage, or may close it; in either scheme, the storage extends to the opening of navigation in the spring."

In Eastern Grain Mill & Elevator Corp. v. Buffalo Steamship Co., 15 F.(2d) 714, this court, in an action at law, applied the principle of the Jungshoved Case to a storage of the cargo agreement after the completion of the voyage. But I think the language of Judge Hough in that case was used by me too broadly. The earlier adjudications were

not, if my recollection serves me, called to my attention.

Since contracts of this character are frequent on the Great Lakes, and are commonly resorted to at the close of navigation, so as to supply a cargo to the vessel at the opening of navigation, and, at the same time, enable storage during the winter at reduced cost, I am persuaded that the rule in the Pulaski and Richard Winslow Cases, which has been regarded for many years as the law, should be followed by me, and that the Jungshoved Case contemplated no extended storage of the cargo and is plainly distinguishable.

The exception is allowed.