## PILLSBURY FLOUR MILLS CO. v. INTER-LAKE S. S. CO.

District Court, W. D. New York. October 31, 1929.

Bigham, Englar, Jones & Houston, of New York City, and Brown, Ely & Richards, of Buffalo, N. Y. (Henry Nathaniel Longley, of New York City, Laurence E. Coffey, of Buffalo, N. Y., and Ezra G. Benedict Fox, of New York City, of counsel), for libelant.

Dustin, McKeehan, Merrick, Arter & Stewart, of Cleveland, Ohio, and Burke & Desmond, of Buffalo, N. Y., for respondent.

HAZEL, District Judge. A cargo of wheat in good condition was shipped on board the E. A. S. Clark on November 4, 1927, at Milwaukee, Wis. She sailed on November 5th, arriving at Buffalo on November 9th. The contract of carriage contained a provision that the grain consigned, upon payment of the freight, was to be delivered on outturned weight. Concededly the cargo was for winter storage; and, though the freighter encountered some heavy weather on her trip down, the stipulation of the parties avers that the grain, upon examination by insurance underwriters, was not perceived to have been damaged on her arrival at her anchorage inside the breakwater—a customary place for mooring vessels having aboard winter storage. The consignees were notified of the arrival at the anchorage, where the vessel remained for five months. When the cargo was delivered at the concrete elevator on April 7, 1928, a large amount of damage was discovered. The action is apparently on contract of carriage, and no negligent act, in consequence of which damage was sustained, is set forth.

The exceptions to the libel are, first, that jurisdiction in admiralty is lacking; and, second, that the damage is not alleged to have been sustained during the transportation.

The primary question is whether the contract of transportation and agreement to store the grain aboard ship during the winter and her subsequent delivery of the cargo in the ensuing spring at the specified elevator constituted a maritime contract.

Reliance, in support of nonjurisdiction, is

placed by respondent upon The Richard Winslow (C. C. A.) 71 F. 426, and The Milwaukee, 15 F.(2d) 886, a case decided by this court, which seem to cover the point under consideration. In the Winslow Case the libelant shipped on board the steamer for transportation from Chicago to Buffalo a cargo of white corn to be stored in the vessel at Buffalo during the winter and unloaded the following spring. During a winter storm the vessel grounded and strained, resulting in damage to the cargo. The libel was dismissed, the Circuit Court of Appeals ruling that the contract was dual in its nature, contemplating a maritime transportation to Buffalo, and storage in the vessel at the port of delivery, which did not involve navigation, since it could not become effective until the completion of the voyage.

■ In the instant case, the contract of carriage was not incidental. In its dual aspect the vessel has arrived at her port of destination, which carried with it, under the principle of the adjudication cited, a constructive delivery and termination of marine liability on the part of the vessel on her arrival at her anchorage in the port of her destination. In the circumstances, the initial liability under the contract as carrier changed to that of warehouseman. It did not constitute a maritime liability to move the cargo in the spring for unloading, since a contract partly maritime and partly nonmaritime, it has often been decided, does not confer a right to invoke maritime jurisdiction. Grant v. Poillon, 20 How. 162, 15 L. Ed. 871; The Ada (C. C. A.) 250 F. 194; The Pennsylvania (C. C. A.) 154 F. 9.

The principle of The Jungshoved (C. C. A.) 290 F. 733, claimed by libelant to apply to this case, was on essentially different facts. There the lighter employed by the steamship to unload the cargo sank in calm weather before delivery of the cargo. The question litigated was that the vessel had not secured a seaworthy lighter or barge for storage in the harbor pending delivery of the merchandise, and accordingly the steamer was held liable.

Importance is also attached by libelant to James Shewan & Sons v. U. S., 266 U. S. 108, 45 S. Ct. 45, 69 L. Ed. 192, but I perceive no controlling analogy, since in that case the libel in personam was to recover for repairs made on the steamship Biran in the merchant service of the United States. The question involved a construction of the Suits in Admiralty Act of 1920 (46 USCA §§ 741, 742), providing for enforcing a remedy in personam in lieu of in rem pursuant to Shipping Board Act of 1916 (46 USCA § 801 et seq.);

the court deciding that simply laying up the vessel for the winter, which had previously been engaged in mercantile trade, did not prevent maintaining the libel in personam.

■ It is next contended that, inasmuch as the title of the cause states that it is against the respondent in a cause of "contract and cargo damage civil and maritime," the question of negligence in caring for the cargo may be presumed upon proof of delivery to a bailee in good order and redelivery by him in impaired condition. But, even though it be inferred that there existed a failure to exercise a proper degree of care in the storage of the grain, it is not believed that such an act of negligence constitutes a marine tort. The case of The Plymouth, 3 Wall. 20, 18 L. Ed. 125, was on widely different facts from the instant case. There a vessel at a wharf took fire which spread to warehouses on land, and the court decided that origination of the cause of the fire on navigable water does not confer jurisdiction in admiralty. It was not a maritime tort. It is true, as said in London Guarantee & Accident Co. v. Ind. Accident Comm. of California, 279 U. S. 109, 49 S. Ct. 296, 73 L. Ed. 632, the test of admiralty jurisdiction is whether the tort was committed on navigable waters, as distinguished from its committal aboard the vessel, yet libelant's failure to specifically set forth any negligent act after the arrival of the steamship inside the breakwater implies a waiver of the tort and election to proceed on the contract of carriage. Catlin v. Adirondack Co., 81 N. Y. 639, 11 Abb. N. C. 377; and Smith v. Hodson, 4 Term Rep. 211; Dupont v. Vance, 19 How. 162, 15 L. Ed. 584.

In Dittmar v. Frederick Starr Contracting Co., 249 F. 437, 439, the Circuit Court of Appeals for this circuit ruled that an allegation of negligence in connection with the contract, "and not as pure torts ex delicto," does not change the character of the libel from one of contract to one of tort. See Admiralty Rule 22 (28 USCA § 723). That the anchored steamship was afloat on a navigable stream when used for warehousing is not the test of admiralty jurisdiction. It does not create a marine contract, since, as said in The Richard Winslow, supra, to use the steamship as a floating warehouse does not pertain to navigation. And in The Pulaski (D. C.) 33 F. at page 384, the court said: "To be the subject of an admiralty lien for a breach of contract, the vessel must be, at the time, engaged in commerce and navigation, or in preparation therefor, * * * and the service must be maritime in its nature."

The libel does not claim that the damage

was sustained during the transportation; therefore, inferentially, the cargo was damaged while in storage after tying up at the breakwall.

The exceptions are sustained, with the privilege of amending, if libelant elects to do so.